## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CASE NO. _____

`3-12-cv-693-S`

| | | |
|---|---|---|
| JONATHAN LANHAM and | ) | |
| LARRY FORMAN, | ) | |
| on behalf of themselves and a | ) | |
| Class of persons similarly situated, | ) | PLAINTIFFS |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| HIGHER ONE HOLDINGS, INC., | ) | |
| | ) | |
| THE BANCORP BANK, | ) | |
| | ) | |
| URBAN TRUST BANK, and | ) | |
| | ) | |
| WRIGHT EXPRESS FINANCIAL | ) | |
| SERVICES CORPORATION | ) | DEFENDANTS |

\* \* \* \* \* \* \* \*

## CLASS ACTION COMPLAINT

Plaintiffs, Jonathan Lanham and Larry Forman, by counsel, for their Complaint against the Defendants Higher One Holdings, Inc. ("Higher One"), The Bancorp Bank ("Bancorp"), Urban Trust Bank ("Urban Trust"), and Wright Express Financial Services Corporation ("Wright Express"), state as follows:

## INTRODUCTION

1.       This is a class action seeking monetary damages, restitution, and declaratory relief from Defendants Higher One, Bancorp, Urban Trust, and Wright Express, arising from their unfair and unconscionable practices of automatically creating bank accounts for college students and depositing students' financial aid funds into Higher One accounts without students'

permission.

2.      At all relevant times, Higher One, which is not a bank, partnered with Bancorp, Urban Trust, and/or Wright Express to provide checking account services to students.

3.      Higher One has arrangements with hundreds of colleges and universities around the country whereby a student's scholarship, federal financial aid, and/or loan money (including Title IV, Higher Education Act ("HEA") program funds) are automatically deposited into a Higher One bank account, without students' consent, and even without alerting students beforehand. In Kentucky, these schools include the University of Louisville, the Kentucky Community and Technical College System, Eastern Kentucky University, Kentucky State University, and Sullivan University. The financial-aid refunds—the money left over after the school deducts its tuition and fees, which students are to use for things like books and living expenses—are automatically deposited into a Higher One bank account linked to a Higher One debit card.

4.      Higher One thus "defaults" students into use of the Higher One account, and forces Kentucky students to affirmatively "opt-out" of the Higher One account if students would like to deposit their financial aid funds in another bank.

5.      Higher One then uses three tactics to make sure that students do *not* opt-out of this default: first, it bombards students with unsolicited and deceptive marketing materials; second, it intentionally delays access to financial aid funds for students who choose to use other banking providers; third, it conceals the true costs of the Higher One accounts.

6.      Students may access their financial aid funds immediately only by not opting-out of the Higher One account that has been created for them. Because, almost by definition, financial aid recipients are dependent on their financial aid money to survive, Higher One

coerces students to remain in the default option and use Higher One accounts in order to have immediate access to their funds.

7.    These tactics are extraordinarily successful: Higher One has stated that approximately 80% of students remain in the "default" option. Higher One then proceeds to assess and collect unfair, deceptive, unusual, unconscionable, and bank fees that would be avoidable with an account at another bank on these "captive" banking accounts.

8.    Once a student is locked in to a Higher One account, he or she is then assessed numerous unconscionable and unusual bank fees.

9.    A recent report by the U.S. Public Interest Research Group, "The Campus Debit Card Trap", condemns Higher One's activities:

- "Fees can be steep and frequent for students using the university-adopted cards, including a variety of per-swipe fees, inactivity fees, overdraft fees [and] ATM fees[.]"

- "Potentially aggressive marketing tactics can make students captive customers."

- "Access to student financial aid funds placed on debit cards can be subject to limited availability of 'convenient' fee-free ATMs for student loan withdrawals despite U.S. Department of Education rules. Students end up paying fees to access their aid."

10.   Targeting students with excessive bank fees—and using scarce financial aid money (much of which is taxpayer money) to pay those fees—is unethical, immoral, and contrary to public policy, and makes it more difficult for students to meet legitimate education expenses. It violates the public policy expressed by various Federal Department of Education regulations, including 34 C.F.R. 664.164(c)(3)(iv), which state that regardless of how students receive their financial aid refunds, entities are **prohibited** from charging a fee for delivering

those title IV funds. It also violates the public policy expressed by the HEA, which limits the use of federal financial aid funds to educational expenses.

11.    As discussed below, students cannot reasonably avoid certain Higher One fees.

12.    Many students pay Higher One's unconscionable bank fees with borrowed money, often at 7 percent interest or higher. Other students receiving grant aid are low-income with a high level of need.

13.    In 2010 alone, Higher One took in at least $66 million on so-called "convenience fees" charged to students.

14.    Had Higher One not automatically opened checking accounts on students' behalf, bombarded them with deceptive advertising, and concealed true account costs, students could have chosen to use their existing bank or another bank which offers similar services without the unconscionable fees discussed herein—many of which are rarely, if ever, charged by other banks.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which at least one of the classes are a citizen of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims for violations of the Kentucky Consumer Protection Act, KRS § 367, et seq., for rescission, and for unjust enrichment, conversion, and statutory theft.

16.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391, because Higher One avails itself of the laws and protections of Kentucky, does business in this District at the

University of Louisville and other higher education institutions, and because Defendants have imposed substantial bank fees on consumers by means of a scheme which affects this District.

## THE PARTIES

17.     Plaintiff, Jonathan Lanham, is a former Higher One account holder, a 2012 graduate of the University of Louisville Brandeis School of Law, and a citizen of Kentucky. Plaintiff Lanham has incurred PIN-Based Transaction Fees, Non-Higher One ATM Transaction Fees, and Inactivity Fees since 2009.

18.     Plaintiff, Larry Forman, is a current Higher One account holder, a graduate of the University of Louisville, a current student at the University of Louisville Brandeis School of Law, and a citizen of Kentucky. Plaintiff Forman has incurred both PIN-Based Transaction Fees and Non-Higher One ATM Transaction Fees since 2006.

19.     Defendant, Higher One, represents it is "a leading company focused on helping college business offices manage operations and providing enhanced service to students. Through a full array of services from refunds, payments, electronic billing, payment plans and more, Higher One works closely with colleges and universities to ensure students receive Financial Aid refunds quickly, can pay tuition and bills online, make on-campus and community purchases and learn the basics of financial management." Higher One is a corporation established under the laws of the State of Delaware, with its principal place of business in New Haven, Connecticut.

20.     Until recently, pursuant to an agreement with Higher One, Defendant Bancorp, which has more than $2 billion in assets, provided Higher One customers FDIC- insured depository services for checking accounts. Bancorp is a corporation established under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

21.     Pursuant to an agreement with Higher One, Defendant Urban Trust, which has

about $600 million in assets, provides Higher One customers FDIC-insured depository services for checking accounts. Urban Trust maintains its headquarters in the state of Florida and is supervised by the Office of the Comptroller of the Currency ("OCC").

22.    Pursuant to an agreement with Higher One, Defendant Wright Express, which has over $1.3 billion in assets, provided Higher One customers FDIC-insured depository services for checking accounts. Wright Express maintains its headquarters in the state of Utah and is supervised by the Federal Deposit Insurance Corporation ("FDIC").

## CLASS ALLEGATIONS

23.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

24.    The proposed Classes are defined as:

"All current and former students in the Commonwealth of Kentucky who were enrolled without their consent in a Higher One bank account."

"All Higher One customers in the Commonwealth of Kentucky who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred a PIN-based Transaction Fee, a Non-Higher One ATM Fee, or an Overdraft Fee (the "Fee Class").

The Class and Fee Class are referred to collectively as the "Classes."

25.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

26.    Excluded from the Class are:

a.    Defendants and any entities in which Defendants have a controlling interest;

b.      Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

c.      The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.      Persons or entities with claims for personal injury, wrongful death, and/or emotional distress;

e.      All persons or entities that properly execute and timely file a request for exclusion from the Class;

f.      Any attorneys representing the Plaintiffs or the Class; and

g.      All governmental entities.

27.     <u>Numerosity—Fed. R. Civ. P. 23(a)(1)</u>.  The Class is comprised of over 100 people and possibly thousands of individuals who were Defendants' customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class members is presently unknown.  The identity of the Class members is ascertainable and can be determined based on Defendants' records.

28.     <u>Typicality—Fed. R. Civ. P. 23(a)(3).</u>  Plaintiffs assert claims that are typical of the entire Class.  The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, were improperly coerced into using a Higher One account and then improperly charged bank fees by Higher One. The representative Plaintiffs, like all Class members, have been damaged by Higher One's misconduct in that they have been forced to use a Higher One account to access financial aid funds, and have been assessed and/or will continue to be assessed unfair and unconscionable bank fees. Furthermore, the factual basis of Higher One's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in

injury to all members of the Classes.

29.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

30.     Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3).  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a.    Automatically open Higher One accounts on behalf of students and deposits financial aid money into such accounts without consent;

b.    Aggressively market directly to students, even before matriculation, and without students' consent;

c.    Co-brand marketing materials and the debit card sent to students, fostering the belief that Higher One is endorsed by, or is the preferred banking "partner" of, a student's college or university;

d.    Deceptively represent in marketing materials that it offers "a no-monthly balance, no-monthly fee FDIC-insured checking account tied to the debit card";

e.    Deceptively represent in marketing materials that students are provided with a Higher One "debit" card, when in fact Higher One requires that it be used as "credit" card to avoid fees;

f.    Deceptively encourage students not to opt-out of their Higher One accounts without adequately disclosing the true nature of those accounts, including unconscionable and unusual usage fees;

g.    Intentionally make it difficult for students to opt-out of the Higher One

account by failing to provide an online "direct deposit" option and delaying access to financial aid monies for students who choose to use other banking providers;

h.    Impose contractual forms upon consumers only electronically, and only after a disbursement choice has been made, without providing consumers with the meaningful ability to review or approve the terms of those contracts prior to forcing a student to make a disbursement choice;

i.    Deceive students about PIN Transaction Fees by, among other things, labeling the Higher One access device a "debit card" even though a student must use it as a "credit" card to avoid the fee;

j.    Do not provide means by which students can reasonably avoid PIN Transaction Fees;

k.    Do not provide means by which students can reasonably avoid Non-Higher One ATM Transaction Fees;

l.    Charge students, in effect, two service fees for every non-Higher One ATM withdrawal;

m.    Require their customers to enter into standardized account agreements which include unconscionable provisions;

n.    Force students to use financial aid loan money to pay bank fees, which increases the cost of such bank fees over time, and is in violation of federal public policy;

o.    Violate Department of Education regulations and guidance;

p.    Require their customers to enter into standardized account agreements that

include unconscionable provisions;

q.      Convert money belonging to Plaintiffs and other members of the Classes through their policies and practices;

r.      Are unjustly enriched through their policies and practices;

s.      Violate the consumer protection acts of Connecticut and Kentucky through its policies and practices; and

t.      Violate the Electronic Funds Transfer Act and Regulation E.

31.      Other questions of law and fact common to the Classes include:

a.      The proper method or methods by which to measure damages, and

b.      The declaratory relief to which the Classes are entitled.

32.      Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful policies and practices and the same or substantially similar unconscionable provisions of Higher One's account documents. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

33.      <u>Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.  Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seek to represent.  Plaintiffs are committed to the vigorous prosecution of this action Plaintiffs are represented by experienced Class Counsel.  Class Counsel have litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

34.      <u>Superiority—Fed. R. Civ. P. 23(b)(3)</u>.  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class

Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the Class have suffered irreparable harm as a result of Defendants' conduct. Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as Defendants continue to engage in the conduct that is the subject of this Complaint, and Defendants would be permitted to retain the proceeds of their violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

35.     Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A. Higher One Obtains Students' Personal Information Without Students' Consent

36.     Without students' authorization, Higher One acquires sensitive personal information from students' education and financial records.

37.    Higher One uses this information to distribute pre-loaded debit cards associated with a bank account to students. Higher One loads sensitive personal information from students' education and financial records onto those cards—even for students who opt-out of use of a Higher One account.

38.    Higher One uses this information to send repeated and deceptive marketing to students, urging them, in effect, not to use any other banking options to receive their financial aid funds.

**B. Higher One Defaults Students Into Use of a Higher One Account**

39.    Without students' consent, Higher One receives all financial aid refund money owed to students at a given college or university. Upon information and belief, Higher One then opens accounts or for each student—also without students' consent and without informing students.

40.    Because Higher One automatically opens accounts, into which financial aid money is deposited, students are required to use a website Higher One has designed in order to receive any financial aid refund whatsoever. This website is "co-branded" to appear to be endorsed and affiliated with a student's university or college.

41.    By opening accounts for students, Higher One therefore creates a "default" that students must "opt-out" of if they are to use a different banking services provider to receive their financial aid money.

42.    As discussed below, Higher One then uses three tactics to make sure that students do not opt-out of this default: first, it bombards students with unsolicited marketing materials; second, it intentionally delays access to financial aid funds for students who chose to use other banking providers; third, it conceals the true fees and costs associated with the accounts.

**C. Without Students' Permission, Higher One Sends Repeated and Deceptive Marketing Materials to Discourage Students From Opting-Out of Their Higher One Accounts**

43.     Higher One aggressively markets its services directly to students via email and direct mail without students' consent.

44.     Higher One's June 2010 IPO prospectus describes key components of its strategy to extract fees from students by aggressively marketing to them even prior to the time they set foot on campus:

> Once we enter into a contract with a higher education institution, we begin focusing our marketing effort on the institution's students… We work closely with our higher education institutional clients to communicate the benefits of our products and services through **school-branded communications and literature** in an effort to increase both the number of new OneAccounts and usage of existing OneAccounts… Typically, we will send information to parents and incoming students soon after their admission applications are accepted by the school and during student orientation. We generally **contact returning students before the beginning of a new semester** and place signs in strategic campus locations such as bookstores, student centers, dining halls, athletic facilities and cash dispensers to increase awareness of our products and services… In an effort to strengthen our relationships with students, we often sponsor and support on-campus events and **create a co-branded website with the higher education institutions**… (emphases added).

45.     Higher One mails ready-to-use plastic debit cards to students without their consent, complete with unique account information and sensitive student information stored on the card, and tells students that they must activate their card to be entitled to receive their financial aid benefits.

46.     Higher One also falsely represents that it has the endorsement of, or is the preferred banking provider of, a student's college or university. As discussed in the Higher One IPO, "we often sponsor and support on-campus events and create a co-branded website with the higher education institutions." A school's emblem is featured in the letterhead of student

communications from Higher One and on the debit cards issued by Higher One.

47.    Prior to the beginning of a term, students receive an email from Higher One stating that their college:

[H]as partnered with Higher One to provide a new method for receiving financial aid disbursements to all…students. It is called the [name of college] Debit Card. If you have received your Higher One card and are expecting Financial Aid; please **activate the card** and choose your disbursement preference right away to avoid any delays to your disbursement (emphasis in original).

48.    In such emails, and by use of the term "partnered," Higher One falsely implies to students that it is the college's preferred provider of banking services.

49.    In marketing emails directly delivered to students using their school email addresses, mailings and other advertisements, Higher One repeatedly touts the speed of its refund, but conceals the myriad fees students will be subjected to (or students' inability to reasonably avoid such fees, as discussed below) if they in fact use a Higher One account.

50.    Moreover, marketing materials produced by Higher One tell students that "Easy Refund is the fastest delivery method. By choosing this option you'll be choosing to open a no-monthly balance, no-monthly fee FDIC-insured checking account tied to the debit card." In such marketing materials, Higher One conceals the fees it *does* charge students for use of their financial aid money (or students' inability to reasonably avoid such fees, as discussed below).

51.    As discussed above, Kentucky students are required to use a website Higher One has designed in order to receive any financial aid refund whatsoever. The site aggressively, and falsely, represents that Higher One is the "preferred" service provider, as it attempts to create a captive audience of a college's students.

**D. Higher One Purposely Makes It Difficult for Students to Opt-Out of Higher One Services by Forcing Students to Wait Longer to Use Another Bank**

52.    Higher One does not allow students to choose their electronic disbursement options without undue bias and pressure. Options other than the default Higher One account are not presented equally.

53.    Through various marketing channels, students are told that they will get their financial aid refunds more quickly and "immediately" if they choose Higher One and that financial aid disbursements will be "delayed" if students do not choose Higher One for their disbursement.

54.    However, a refund is "delayed" only by the actions of Higher One.

55.    In order to access financial aid funds, students must visit the Higher One website. Upon information and belief, a student must use the 16-digit debit card number that they were sent in the mail to sign in. Students are then provided three options for a financial aid distribution.

56.    The first option is to remain in the Higher One default and receive money immediately.

57.    The second option is for a direct deposit, which requires a student to print out a form and mail it in to Higher One; this option takes approximately one week for a student to receive funds.

58.    The third option is to request a paper check; this option takes approximately one month for a student to receive funds.

59.    Higher One does not provide an online option for a student to deposit financial aid refunds in another bank.

60.    This is despite the fact that in similar electronic payment systems, companies

routinely provide an online direct deposit option, and such technology is commonly and cheaply available.

61.    For example, the federal government offers direct deposit options for receipt of Social Security benefits electronically. Upon information and belief, Higher One could easily do so here, but it intentionally does not provide that option in order to disincentivize students from choosing other banking options.

62.    Had direct deposit been available as an online option (and thus not come with an artificial time delay), Plaintiffs could have and would have used their existing bank accounts, and accounts at different banks, to deposit their financial aid funds—accounts which would not have come with the unconscionable, unfair, deceptive, misleading and unusual fees Higher One charges, as discussed below.

63.    In other words, Higher One intentionally makes it more difficult for students to deposit their financial aid refunds into accounts at other banks than to follow the default option of using the new bank account opened by Higher One.

64.    Because, by definition, financial aid recipients are dependent on their financial aid money to survive, Higher One thus coerces students to remain in the default option and use Higher One accounts in order to have immediate access to their funds.

65.    Higher One's tactics are extraordinarily successful. In practice, most students end up receiving their financial aid refund through Higher One. In 2009, for instance, 76 percent of the students at participating colleges chose to bank with Higher One, rather than choosing another bank, according to filings with the Securities and Exchange Commission.

66.    In short, Higher One has leveraged its relationship with colleges and universities to make itself essentially the *de facto* or default choice for banking on these campuses.

67.     It then uses this anticompetitive advantage to charge students unconscionable and unusual bank fees.

**E. Higher One Conceals The Unconscionable Fees Associated with Its Accounts**

68.     The terms of Higher One's checking accounts are contained in standardized account holder agreements and are made available to students only in "click-through" form on Higher One's website (the "Account Agreement").  The Account Agreement is never provided to students in written form, and, upon information and belief, is only provided after a student has been forced to choose the "immediate refund" default option of using the Higher One account.

69.     Nor does Higher One make fee information easily accessible. The fee schedule is a separate document and requires a student to click a separate link from the Account Agreement and read through a page deceptively filled with all of the free services offered by Higher One— before finally getting to the fee-based services page.

70.     The contract formation process imposed by Higher One is thus procedurally unconscionable because it conceals the true nature of the contract and of the accounts, and is yet another attempt by Higher One to ensure students do not "opt-out" of their Higher One account.

71.     Moreover, such terms are drafted and imposed by Higher One, which is the party of vastly superior bargaining strength, on college students. These agreements thus constitute agreements of adhesion.

72.     Higher One conceals the unconscionable, unfair, deceptive, misleading and unusual fees it charges (and students' inability to reasonably avoid these fees, as discussed below) prior to requiring students to agree to use a Higher One account on the Higher One website.

73.     Because the Account Agreement is both a contract of adhesion and because

Plaintiffs and Class members must search out the Account Agreement on Higher One's website, Higher One and Plaintiffs and Class members did not have the "meeting of the minds" necessary to form a valid contract.

**F. By Providing An Extremely Limited Number of "In-Network" ATMs, Which Themselves Provide Only Limited Hours and Days of Operation, Higher One Makes it Impossible for Students to Avoid "Non-Higher One ATM Transaction Fees"**

74.     Students may access the funds in their Higher One accounts by making ATM withdrawals.

75.     Higher One charges a $2.50 "Non-Higher One ATM Transaction Fee" for all ATM withdrawals made at ATMs not owned by Higher One. Higher One charges this fee in addition to ATM fees charged by the owners of the ATMs. Accordingly, students are charged $4.50 or more for each ATM withdrawal they make from a non-Higher One ATM.

76.     Charging students upwards of $4.50 for an ATM withdrawal is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, especially since "in-network" Higher One ATMs are exceedingly rare, and are not available to students at all hours, on weekends, or during school vacations or holidays. Therefore, students cannot reasonably avoid such fees, as they must use "out of network" ATM machines during these periods.

77.     Upon information and belief, Higher One intentionally limits the number of "in-network" ATMs it provides. Indeed, Higher One disburses financial aid to students at over 520 colleges across the county, including numerous colleges in Kentucky, but has only about 600 ATMs in service, according to U.S. PIRG.

78.     Upon information and belief, Higher One intentionally limits the access hours of its "in-network" ATMs. U.S. PIRG reports that Higher One encourages ATMs to be placed

inside limited-access buildings by charging higher fees to schools for ATMs placed outside.

79.     Moreover, frequent reports indicate that the scarce Higher One ATMs often run out of cash during peak usage periods—for example, at the beginning of semesters. U.S. PIRG reports there are commonly long lines of students trying to access financial aid funds at Higher One ATMs on campus, and that ATMs run out of money.

80.     The failure of Higher One to provide adequate fee-free ATM access to students violates the public policy of the U.S., including 34 C.F.R. 668.164 (c) (3)(v), which provides that an institution must ensure that students have **convenient** access to ATMs or a branch office of the bank in which the account was opened.

81.     Higher One conceals the fact of this extremely limited access to Higher One ATMs from students at the time it is aggressively marketing to students and at the time a student is forced to choose whether or not to "opt-out" of a Higher One account.

82.     Indeed, in an apparent attempt to remedy this concealment, Higher One has recently updated its Account Agreement to say:

> **Our ATMs are not accessible on your school's campus 24 hours a day, 7 days a week, so you will need to plan accordingly by contacting your school to determine the accessibility of our ATM(s) on your campus. If our ATM(s) on your campus are not functioning properly due to any maintenance or repair related issues or be out of cash at any time** and you use a Non-Higher One ATM we will refund you up to $5.00 per day on any Non-Higher One ATM fee(s) and surcharge(s) you incur. This refund only applies to campuses where our ATM(s) has already been installed. You will need to contact us in writing via EasyHelp, website or by mail to request this credit (emphases added).

83.     Plaintiffs did not have the benefit of such disclosures, nor were they provided the offer of fee refunds.

84.     Further, even if the fee schedule had been properly provided to students prior to or after account opening (it was not), the disclosures contained therein are ineffective and

misleading. The fee schedule states:

> "Non-Higher One ATM Transactions ($2.50 per transaction). Charged if the student uses any ATM that is not a Higher One ATM."

85.    In the above, Higher One conceals the fact that this fee will be charged in addition to the fee charged by the owner of the non-Higher One ATM, and that the total fee for an ATM withdrawal will exceed $4.50.

86.    Therefore, Higher One breaches the Account Agreement when it allows the assessment of upwards of $4.50 in fees for each non-Higher One ATM withdrawal.

87.    These ATM practices violate Department of Education ("DOE") guidance. In Dear Colleague Letter GEN-12-08, DOE states:

> "Under 34 C.F.R. 164(c)(3)(ii), the institution must inform the student *before the account associated with the card is opened* of the terms and conditions of the card or other instrument, *including any fees and other costs associated with the account*. This information should include whether all or some of the fees incurred per month by the student will be refunded back to the student's account. *Institutions also should mention whether cards issued through its contracted financial institution's ATM are part of a surcharge-free network, indicate the name of the network, and indicate the approximate number of available ATM's in that network both nationally and locally. Institutions should also disclose how many surcharge-free ATM's are on their campus, their location, the hours that they are accessible to patrons, and, if available, a hyperlink to an ATM locator for their affiliated networks* (emphasis added)."

88.    As discussed above, Higher One does not comply with this guidance and conceals from students its extremely limited number of "fee-free" ATMs and the fact that the small number of ATMs makes it very likely their students will incur additional out of network fees.

89.    Charging the equivalent of Non-Higher One ATM Transaction Fees is not industry practice. Upon information and belief, the vast majority of U.S. banks do not charge a similar "out of network" fee. Had Higher One not forced students to affirmatively opt-out of Higher One accounts, bombarded students with deceptive marketing materials, and intentionally

made other banking options unpalatable, students could easily have chosen a bank which offered

a much larger network of free ATMs, allowing students to avoid this unconscionable and

unusual Non-Higher One ATM Fee.

**G. By Labeling Its Access Device a "Debit Card," Higher One Deceives Students Into
Incurring "PIN-Based Transaction Fees"**

90.    A Higher One debit card can be used to make a purchase in two ways: (1) an

Automated Clearing House ("ACH") or "debit" transaction in which a customer enters his/her

PIN number at the point of sale; or (2) an "offline signature" or "credit" transaction, in which the

debit card is treated like a credit card and the customer usually is required to sign a receipt. A

user selects the option of "debit" to use the card in an ACH transaction, or selects the term

"credit" to use the card in an "offline signature" transaction.

91.    The Higher One debit cards issued to students after Higher One accounts are

opened on their behalf are boldly stamped with the word "debit" on the front on the card and in

two other places on the card.

92.    Further, the Account Agreement specifically refers to all debit card transactions as

"*Debit* MasterCard® Card Point-of-Sale ("POS") Transactions" (emphasis added).

93.    In addition, in marketing materials, such as "Orientation" videos Higher One

makes available online, Higher One states that "it's a debit card, NOT a credit card."

94.    In those videos, actors hired by Higher One also enact the following scene: A

cashier asks "debit or credit" to a college student. That student turns to his friend and says,

"please tell me why this question doesn't paralyze me with fear." The friend answers, "You can

use your card anywhere a debit Mastercard is accepted, on campus, or off."

95.    Yet Kentucky students who swipe the card as a "debit" and enter their PIN get

charged a 50- cent PIN-Based Transaction Fee by Higher One each time. The only way to avoid

that 50-cent fee on every purchase is to press "credit" at a sales terminal and sign the receipt.

96.     However, Higher One misleads students by placing the term "debit" on the card and by referring to the "debit" Mastercard in disclosures and marketing materials, when in fact, the student must select the "credit" option in order to avoid the fee.

97.     In other words, Higher One deceptively tells students on the face of the card and in marketing materials and disclosures that it is not a credit card. Nonetheless, a student must use it as a credit card in order to avoid being charged the fee.

98.     Further, at some merchants, students do not even have the choice of selecting the "credit" option.

99.     Other merchants make it difficult to find the "credit" option at terminals. For example, customers swiping a debit card at Wal-Mart are immediately presented with the PIN screen; to use the "credit" option, a student must press "cancel" to exit the PIN screen, then press "credit" on the next screen. Higher One does not instruct students how to select the "credit" option in this circumstance.

100.     At other merchants, students cannot select the "credit" option unless their purchase is above a minimum amount.

101.     Even more confusing, some merchants process transaction as a "PIN-less" debit transaction, even if a student does not provide his or her PIN. In these cases too, Higher One assesses the PIN-Based Transaction Fee even when the student has no choice about how the transaction is processed.

102.     Accordingly, in many cases students cannot reasonably avoid the assessment of the PIN-Based Transaction Fee.

103.     That Higher One's representations are not effective and that PIN transactions are

in many cases unavoidable is evidenced by the fact that, according to Higher One, over 50% of all its student accountholders incur at least one PIN-based fee.

104.    Charging PIN-Based Transaction Fees is not industry practice. Upon information and belief, the vast majority of U.S. banks do not charge such a fee.

105.    Had Higher One not forced students to affirmatively opt-out of Higher One accounts, bombarded students with deceptive marketing materials, and intentionally made other banking options unpalatable, students could easily have chosen a bank which offered similar services but did not charge, for example, this unconscionable, unfair, deceptive, misleading and unusual PIN-Based Transaction Fee.

**H. Higher One Violates Federal Public Policy Promulgated in the Higher Education Act, Department of Education Regulations and Regulation E**

106.    As discussed above, Higher One charges students for access to their financial aid funds, in violation of DOE regulations, including 34 C.F.R. 664.164(c)(3)(iv), which states that regardless of how students receive their financial aid funds, an entity is **prohibited** from charging a fee for delivering those funds.

107.    The public policy of the United States makes clear that students are to have a clear and fair choice on how to receive their financial aid funds.

108.    DOE rules mandate that students must have the choice of how to receive their financial aid funds. If an educational institution opens a bank or prepaid card account on behalf of a student or parent, it must, among other requirements, "obtain in writing affirmative consent from the student or parent to open that account." 34 C.F.R. § 668.14(c)(3)(i).

109.    Higher One violates this regulation and acts contrary to the public policy of the United States because it does not obtain consent from students **prior to** "defaulting" a student into a Higher One account it has opened. A college or university sends funds to Higher One prior

to any consent by student. Further, Higher One sends a pre-printed, unique debit card to students with account information and sensitive personal information already stored on it.

110.    Moreover, DOE guidance requires that all information required for an authorization "must be conspicuous," Federal Student Aid Handbook (September 2011), Vol. 4 Ch. 1, at 4-7, and must be provided before an account is opened. 34 CFR 668.164(c)(3).

111.    Higher One violates DOE guidance in Dear Colleague Letter GEN-12-08 and 34 C.F.R. 668.25, which state that a student must be informed "before the account associated with the card is opened of the terms and conditions of the card or other instrument, including any fees and other costs associated with the account" and should also "disclose how many surcharge-free ATM's are on their campus, their location, the hours that they are accessible to patrons, and, if available, a hyperlink to an ATM locator for their affiliated networks."

112.    Further, public policy clearly contemplates the use of federal financial aid funds only for authorized educational purposes. Higher One is in the business of distributing financial aid funds, yet it ignores policy.

113.    Higher One does not make account terms and conditions "conspicuous," Federal Student Aid Handbook (September 2011), Vol. 4 Ch. 1, at 4-7, and does not provide those terms and conditions before an account is opened. 34 CFR 668.164(c)(3). As discussed above, Higher One does not make the Account Agreement or fee schedule reasonably available (and indeed, never provides them in written form), nor does it inform students that its "in-network" ATM. system is extremely limited. Higher One therefore acts contrary to the public policy of the United States.

114.    DOE has made clear that "a school may not require or *coerce* the student or parent to provide an authorization…". 34 C.F.R. § 668.165 (emphasis added).

115.    By intentionally delaying access to financial aid funds for students who opt-out of the Higher One account, Higher One coerces students to provide an "authorization" to use the Higher One account, in violation of the public policy of the United States.

116.    Further, DOE regulations state that if a bank account is opened for a student, Higher One cannot "subsequently convert the account, card, or device to a credit card or credit instrument." 34 C.F.R. § 668.164(c)(3)(vii). Because Higher One "defaults" students into an account which allows a student to overdraw the account and incur Overdraft Fees and receive cash advances, Higher One debit cards are a "credit instrument," in violation of the public policy of the United States.

117.    Further, public policy clearly contemplates the use of federal financial aid funds only for authorized educational purposes. Higher One is in the business of distributing financial aid funds, yet it ignores policy.

118.    HEA promulgates the public policy of the United States with respect to federal financial aid. Federal student loans and grants are to be used **only** to cover education-related expenses, including tuition and fees, room and board, books, school supplies, technology needs, and transportation. Loans and grants can also help pay for necessary dependent care.

119.    According to 34 C.F.R. 668.25, a third party servicer like Higher One must "[c]omply with all statutory provisions of or applicable to Title IV of the HEA…including the requirement to use any funds that the servicer administers under any Title IV, HEA program and any interest or other earnings *thereon solely for the purposes specified in and in accordance with that program*" (emphasis added).

120.    Federal financial aid funds are *not* to be used for bank fees. Yet Higher One knowingly takes students' federal financial aid monies to pay bank fees.

121.    In addition, the Electronic Funds Transfer Act ("EFTA"), and its implementing Regulation E, provide: "No person may…require a consumer to establish an account for receipt of electronic fund transfers with a particular financial institution as a condition of employment or receipt of a government benefit" 15 U.S.C. § 1693k(2); see Regulation E, 12 C.F.R. § 205.10(e). Federal financial aid funds are a "government benefit" that Higher One requires students to use Higher One services to access, and Higher One therefore violates the EFTA. any interest or other earnings *thereon solely for the purposes specified in and in accordance with that program*" (emphasis added).

### I. Higher One's Unconscionable Provisions and Policies

125.    Higher One's policies and practices are or were unconscionable in the following respects, among others. Higher One:

a.    Automatically opens Higher One accounts on behalf of students and deposits financial aid money into such accounts without consent;

b.    Aggressively markets directly to students, even before matriculation, and without students' consent;

c.    Co-brands marketing materials and the debit card sent to students, fostering the belief that Higher One is endorsed by, or is the preferred banking "partner" of, a student's college or university;

d.    Deceptively represents in marketing materials that it offers "a no-monthly balance, no-monthly fee FDIC-insured checking account tied to the debit card", without ever disclosing in marketing materials the numerous unusual bank   fees it does charge;

e.    Deceptively represents in marketing materials that students are provided

with a Higher One "debit" card, when in fact Higher One requires that it be used as a "credit" card to avoid fees;

f.     Deceptively encourages students not to opt-out of their Higher One accounts without adequately disclosing the true nature of those accounts, including unconscionable and unusual usage fees;

g.     Intentionally makes it difficult for students to opt-out of the Higher One account by failing to provide an online "direct deposit" option and delaying access to financial aid monies for students who choose to use other banking providers;

h.     Imposes contractual forms upon consumers only electronically, and only after a disbursement choice has been made, without providing consumers with the meaningful ability to review or approve the terms of those contracts prior to forcing a student to make a disbursement choice;

i.     Deceives students about PIN Transaction Fees by, among other things, labeling the Higher One access device a "debit card" even though a student must use it as a "credit" card to avoid the fee;

j.     Does not provide means by which students can reasonably avoid PIN Transaction Fees;

k.     Does not provide means by which students can reasonably avoid Non-Higher One ATM Transaction Fees;

l.     Charges students, in effect, two service fees for every non-Higher One ATM withdrawal;

m.     Requires its customers to enter into standardized account agreements

which include unconscionable provisions;

n.     Does not alert its customers that a debit card transaction or ATM transaction will trigger a PIN-Based Transaction Fee and Non-Higher One ATM Fee, and does not provide the customer the opportunity to cancel that transaction, before assessing such fees;

o.     Forces students to use financial aid loan money to pay bank fees, which both exponentially increases the cost of such bank fees over time, and is in violation of federal public policy; and

p.     Violates DOE regulations and guidance.

**J. Higher One's Practices Harmed Plaintiffs**

126.    Higher One's wrongful policies and practices described above harmed Plaintiffs and members of the Classes. The harms to the named Plaintiffs illustrate the harm and damage sustained by Plaintiffs and members of the Classes as a result of Higher One's wrongful policies and practices.

127.    Plaintiffs Lanham and Forman are all current or former customers of Higher One.

128.    In connection with their accounts, the Bank issued debit cards to both named Plaintiffs. A debit card allows customers to access their checking account funds by using the card to execute a transaction.

129.    Both named plaintiffs used their debit cards to make transactions which include, but may not be limited to, purchases at retail stores, transactions at non-Higher One ATMs, and processing of student loan payments.

130.    During and after the aforementioned transactions, named plaintiffs incurred numerous fees, which include but are not limited to transaction fees, ATM fees, and inactive

account fees.

131.     Based on information and belief, the fees assessed Plaintiffs are representative of millions of dollars of fees that Higher One wrongfully assessed and deducted from its customers' accounts.

### K. The Damages Sustained by Plaintiffs and the Classes

132.     As a consequence of Higher One's policies and practices, Plaintiffs and the Classes have been wrongfully forced to use Higher One accounts and pay unconscionable and unusual bank fees. Higher One has improperly deprived Plaintiffs and the Classes of significant funds, causing ascertainable monetary losses and damages.

133.     As a consequence of Higher One's improper fees, Higher One has wrongfully deprived Plaintiffs and the Classes of funds to which it had no legitimate claim.

134.     Because many of these improperly charged fees were in many cases paid with borrowed money, students are effectively paying interest on these fees.

135.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

### FIRST CLAIM FOR RELIEF
### Violations of the Kentucky Consumer Protection Act (KCPA)
### (On Behalf of the Classes)

136.     Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

137.     Defendants' provision of banking services by means of dealing businesss in Connecticut constitutes "trade or commerce" within the meaning of KRS § 367.170.

138.     In order to bring a claim under the KCPA, courts in Kentucky have held that there must be some evidence of unfair, false, unconscionable, misleading or deceptive acts.

29

139.    Under KRS § 367.170, an unfair act shall be construed to be unconscionable.

140.    The acts and practices engaged in by Defendants, and described herein, constitute unfair or unconscionable acts or practices in the conduct of trade or commerce, in violation of the KCPA.

141.    Defendants' policies and practices as alleged herein constitute unfair trade practices under KCPA, as they offend the public policy of the State of Kentucky and the United States, are unethical, oppressive, and unscrupulous, and cause substantial injury to Kentucky consumers at institutions including, but not limited to, the University of Louisville, the Kentucky Community and Technical College System, Eastern Kentucky University, Kentucky State University, and Sullivan University.

142.    Defendants' policies and practices, described more fully, *supra,* including those described in Section I, and exclusive access to students' personal financial information, violate provisions of the KCPA including KRS § 367.175, which states, in relevant part, that it "shall be unlawful for any person or persons to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce in this Commonwealth."

143.    Higher One's practices as alleged herein are immoral, unethical, oppressive, or unscrupulous and cause substantial injury to consumers.

144.    In addition, Higher One's practices "offend[] public policy as it has been established by statutes" and regulations.

145.    As discussed above, Higher One charges students for access to their financial aid funds, in violation of DOE regulations, including 34 C.F.R. 668.164(c)(3), which state that entities are prohibited from charging a fee for delivering financial aid funds.

146.    The public policy of the United States makes clear that students are to have a clear and fair choice on how to receive their financial aid funds.

147.    DOE rules mandate that students must have the choice of how to receive their financial aid funds. If an educational institution opens a bank or prepaid card account on behalf of a student or parent, it must, among other requirements, "obtain in writing affirmative consent from the student or parent to open that account." 34 C.F.R. § 668.14(c)(3)(i).

148.    Higher One violates this regulation and acts contrary to the public policy of the United States because it does not obtain consent from students prior to "defaulting" a student into a Higher One account it has opened. Higher One deposits students' financial aid funds into accounts prior to any consent by student. Further, Higher One sends a pre-printed, unique debit card to students with account information already on it.

149.    The DOE has made clear that "a school may not require or coerce the student or parent to provide an authorization…" to open an account. 34 C.F.R. § 668.165. Higher One acts contrary to the public policy of the U.S. because it deceptively or improperly creates bank accounts for students without their consent, and forces students to use those accounts to access financial aid money.

150.    By intentionally delaying access to financial aid funds for students who opt-out of the Higher One account, Higher One coerces students to provide an "authorization" to use the Higher One account, in violation of the public policy of the United States.

151.    Further, DOE has regulations that state that if a bank account is opened for a student, Higher One cannot "subsequently convert the account, card, or device to a credit card or credit instrument." 34 C.F.R. § 668.164(c)(3)(vii). Because Higher One "defaults" students into an account which allows a student to overdraw the account and incur Overdraft Fees, Higher One

debit cards are a "credit instrument," in violation of the public policy of the United States.

152.    Further DOE regulations require ATM access to be convenient so that students are not charged a fee for accessing their financial aid funds. 34 C.F.R. 668.164(c)(3). As discussed above, Higher One violates this public policy.

153.    Further, public policy clearly contemplates the use of federal financial aid funds only for authorized educational purposes. Higher One is in the business of distributing financial aid funds, yet it ignores policy. Its account allow a student to overdraw the account and incur Overdraft Fees. Thus, Higher One debit cards are a "credit instrument," in violation of the public policy of the United States. 180. The HEA promulgates the public policy of the United States with respect to federal financial aid. Federal student loans and grants are to be used only to cover education-related expenses, including tuition and fees, room and board, books, school supplies, and technology needs, and transportation. Loans and grants can also help pay for necessary dependent care.

154.    Federal financial aid funds are not to be used for bank fees. Yet Higher One knowingly takes students' federal financial aid monies to pay bank fees, contrary to the public policy of the United States.

155.    Higher One also violates the public policy set out in the Electronic Funds Transfer Act ("EFTA"), and its implementing Regulation E, which provide: "No person may … require a consumer to establish an account for receipt of electronic fund transfers with a particular financial institution as a condition of employment or receipt of a government benefit" 15 U.S.C. § 1693k(2); see Regulation E, 12 C.F.R. § 205.10(e). Federal financial aid funds are a "government benefit" that Higher One requires students to use Higher One services to access, and Higher One therefore violates the EFTA.

156.    As discussed above, Higher One accounts are opened for all students—and nearly 80% of students do not opt-out of this default.

157.    Moreover, a student is "defaulted" into the Higher One account, and must affirmatively opt-out of that account if he is to receive financial aid funds in a timely manner.

158.    As a direct and proximate result of Defendants' employment of these unfair or deceptive acts and practices, Plaintiffs and other Class members have suffered an ascertainable loss within the meaning of C.G.S. § 42-110g(a) and have been damaged by Defendants' unlawful acts.

159.    Plaintiffs and Class members are thus entitled to all relief available under KCPA and the corresponding consumer protection statutes in Connecticut.

## SECOND CLAIM FOR RELIEF
### Rescission
### (On Behalf of the Classes)

160.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

161.    Consent by Plaintiffs to the terms of Higher One's Account Agreement and fee schedule was not real or free and was given under mistake or fraud.

162.    By, *inter alia*, using an unconscionable system of "defaulting" students into a Higher One bank account, making an opt-out from that "default" difficult and time-consuming, concealing the true costs of the Higher One accounts, and by imposing contracts of adhesion without proper notice, Defendants improperly induced Plaintiffs to contract.

163.    In addition, Plaintiffs were induced to enter the Account Agreement because of the mistaken belief that Higher One was the preferred banking provider of their college or university, and that they were required to use their Higher One account in order to access their

financial aid funds in a timely fashion.

164.    In addition, Defendants have used, and continue to use, marketing tactics they know or reasonably should have known were false and deceptive.

165.    Higher One affirmatively delays access to financial aid monies for students who choose to use other banking services providers.

166.    Higher One affirmatively represents in marketing materials that it offers "a no-monthly balance, no-monthly fee FDIC-insured checking account tied to the debit card", without ever disclosing in marketing materials the numerous unusual and unconscionable bank fees it does charge.

167.    Higher One affirmatively touts the purported benefits of its account while failing to conspicuously make available the account's terms and conditions and fee schedule, either before or after an account is opened.

168.    With their consent to the contract given only under mistake or fraud, as described above, Plaintiffs seek rescission of the Account Agreement and restitution for all bank fees charged by Defendants.

### THIRD CLAIM FOR RELIEF
**Breach of Contract**
**(On Behalf of the Fee Class)**

169.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

170.    To the extent any valid contract exists, (despite the procedural and substantial unconscionability described herein) it is embodied in Higher One's Account Agreement and related documentation.

171.    Defendants have breached the Account Agreement through their policies and

practices as alleged herein.

172.    Specifically, even if the fee schedule had been properly provided to students prior to or after account opening (which it was not), the fee schedule states: "Non-Higher One ATM Transactions ($2.50 per transaction). Charged if the student uses any ATM that is not a Higher One ATM."

173.    However, the student is charged $4.50 or more for the use of a "non-Higher One ATM."

174.    Therefore, Defendants breach the Account Agreement when they allow the assessment of upwards of $4.50 in fees for each non-Higher One ATM withdrawal.

175.    Plaintiffs and the Fee Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

176.    Plaintiffs and members of the Fee Class have sustained damages as a result of Defendants' breach of contract.

## FOURTH CLAIM FOR RELIEF
### Conversion
### (On Behalf of the Classes)

177.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

178.    Defendants had and continue to have a duty to maintain and preserve their customers' financial aid funds and to prevent their diminishment through their own wrongful acts.

179.    By placing students' financial aid funds into Higher One accounts without students' consent, by defaulting students into Higher One accounts, and by making it difficult for students to opt-out of this default, Defendants have, without proper authorization, assumed and

exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Classes, without legal justification.

180.    Defendants have wrongfully collected PIN-Based Transaction Fees and Non-Higher One ATM Fees from Plaintiffs and the members of the Classes, and have taken specific and readily identifiable funds from their accounts in payment of such fees in order to satisfy them.

181.    Defendants have, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Fee Class, without legal justification.

182.    Defendants continue to retain these funds unlawfully without the consent of Plaintiffs or members of the Classes.

183.    Defendants intend to permanently deprive Plaintiffs and the members of the Classes of these funds.

184.    These funds are properly owned by Plaintiffs and the members of the Classes, not Defendants, who now claim that they are entitled to their ownership, contrary to the rights of Plaintiffs and the members of the Classes.

185.    Plaintiffs and the members of the Classes are entitled to the immediate possession of these funds.

186.    Defendants have wrongfully converted these specific and readily identifiable funds.

187.    Defendants' wrongful conduct is continuing.

188.    As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the Classes have suffered and continue to suffer damages.

189.    By reason of the foregoing, Plaintiffs and the members of the Classes are entitled to recover from Higher One all damages and costs permitted by law, including all amounts that Higher One has wrongfully converted.

### FIFTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the Fee Class)

190.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein, excepting those paragraphs which allege the existence of a valid contract.

191.    By means of Defendants' wrongful conduct alleged herein, Defendants knowingly provide banking services to Plaintiffs and members of the Fee Class that are and/or were unfair, unconscionable, and oppressive.

192.    Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Fee Class. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and members of the Fee Class.

193.    As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Fee Class.

194.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

195.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of PIN-Based Transaction Fees and Non-Higher One ATM Fees on Plaintiffs and members of the Fee Class in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under circumstances making it inequitable to do so

constitutes unjust enrichment.

196.    The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Fee Class. Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Classes all wrongful or inequitable proceeds received by the Bank. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiffs and the members of the Fee Class.

197.    Plaintiffs and members of the Fee Class have no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**Statutory Theft: KRS § 514.030-040**
**(On Behalf of the Classes)**

198.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

199.    Plaintiffs and members of the Class have property interests in the financial aid funds that were deposited, without their consent, in accounts maintained by Defendants.

200.    By automatically depositing such funds, and by debiting unusual and unconscionable bank fees from the accounts of Plaintiffs and the Classes, Defendants have permanently deprived Plaintiffs and the Classes of their property.

201.    Defendants' assessment of bank fees on Plaintiffs' financial aid funds was not authorized by the contract nor was it otherwise authorized by law.

202.    Defendants intended to permanently deprive Plaintiffs and the Classes of the funds that it debited from their accounts.

203.    Plaintiffs and the Classes have been damaged by Defendants' acts in violation of KRS § 514, et seq., and corresponding Connecticut statutes.

**SEVENTH CLAIM FOR RELIEF**

**Violation Of The Connecticut Unfair Trade Practices Act**
**(On Behalf of the Classes)**

204.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

205.    This Count is a class action claim brought pursuant to Connecticut's Unfair Trade Practices Act (the "CUTPA"), General Statutes § 42–110a et seq.

206.    Defendant's actions constitute unlawful, unfair, deceptive and/or fraudulent business acts and/or practices in violation of CUTPA.

207.    Defendant's enrollment of Plaintiffs and the class into a bank account without obtaining the requisite consent or authority, constitutes unlawful, unfair, deceptive and/or fraudulent business acts and/or practices in violation of CUTPA.

208.    Defendant's failure to disclose to Plaintiffs and the class that they would be charged for fees described more fully above constitutes unlawful, unfair, deceptive and/or fraudulent business acts and/or practices in violation of CUTPA.

209.    Defendants refusal to refund the fees paid by Plaintiffs and the class in connection with the Higher One OneAccount constitutes unlawful, unfair, deceptive and/or fraudulent business acts and/or practices in violation of CUTPA.

210.    Defendants material misrepresentations and omissions to Plaintiffs and the classes constitutes unlawful, unfair, deceptive and/or fraudulent business acts and/or practices in violation of CUTPA.

211.    Defendant's misconduct constitutes and was intended to constitute unlawful, unfair, deceptive, and/or fraudulent business acts and/or practices within the meaning of the CUTPA.

212.    Defendant's acts and/or business practices as described above are otherwise

unfair, unconscionable, unlawful, deceptive, and/or fraudulent.

213.    Accordingly, Plaintiffs, on behalf of themselves and all other similarly situated

Class members, requests Class-wide relief and damages as allowed by law.

214.    At all times relevant, Defendant engaged in the aforementioned acts and/or

practices which are unfair, unconscionable, unlawful, deceptive, and/or fraudulent to the

consumer or to any other person.

215.    At all times relevant, Defendant transacted business in the State of Connecticut.

216.    There is no legitimate business reason for Defendant's business acts and/or

practices such that the utility of their business acts and/or practices outweigh the harm to

consumers.  Furthermore, Defendant's business acts and/or practices undermine this state's

fundamental policy against unfair and deceptive business acts and/or practices that are likely to

deceive or mislead consumers and that undercut trust and fair competition in the consumer

marketplace.

217.    The Higher One OneAccount, as described herein, was provided by Defendant to

Plaintiffs and the Putative Class primarily for personal, family, or household purposes.

218.    Defendant, through its employees, agents, and representatives, have engaged in

otherwise unfair, unconscionable, unlawful, deceptive, and/or fraudulent acts and/or practices by

enrolling people in Account Protector without their knowledge and/or consent.

219.    The conduct described supra is "unfair" because it offends established public

policy protecting consumers from deceptive practices and/or is immoral, unethical, oppressive,

unscrupulous, and/or substantially injurious to Plaintiffs and the Classes.

220.    Defendant's conduct is "fraudulent" because it has deceived and/or is likely to

deceive Plaintiff and other reasonable consumers.

221.    Defendant's unfair, unlawful, fraudulent, and/or deceptive acts and/or practices alleged herein were specifically designed to enroll Plaintiff and Class Members in OneAccount and to take their money.

222.    Defendant's unfair, unlawful, fraudulent, and/or deceptive acts and/or practices alleged herein have deceived and/or are likely to deceive Plaintiff and the Classes.

223.    Defendant's misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to such information and would be induced to act upon such information in enrolling in OneAccount, whether voluntarily or involuntarily.

224.    Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such misrepresentations and omissions may be presumed as a matter of law.

225.    Plaintiffs and the Class relied to their detriment on Defendant's misrepresentations and omissions (a) by not affirmatively opting out or declining to enroll in the program and (b) by unknowingly and unwillingly being enrolled into OneAccount.

226.    Plaintiffs and each member of the Class have been damaged as a result of Defendant's unfair, unlawful, fraudulent and/or deceptive conduct alleged herein.  Plaintiff has lost money or property as a result of Defendant's conduct, in the form of unauthorized fees and associated charges.

227.    This monetary loss is an economic injury to Plaintiff caused by Plaintiff's enrollment – whether voluntary or involuntary – in OneAccount.  Plaintiff is entitled, therefore, to injunctive relief and restitution, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiffs hereby

demand a trial by jury as follows:

1.    Declaring Defendants' policies and practices to be wrongful, unfair, and unconscionable;

2.    Permanently enjoining Defendants from continuing their unfair, fraudulent, wrongful, and deceptive acts alleged herein;

3.    Restitution of all PIN-Based Transaction Fees and Non-Higher One ATM Fees paid to Defendants by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

4.    Disgorgement of the ill-gotten gains derived by Defendants from their misconduct;

5.    Establishment of a constructive trust over all of the proceeds in Defendants' possession belonging to the Plaintiffs and members of the Classes;

6.    Actual damages in an amount according to proof in an amount that exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs;

7.    Punitive and exemplary damages;

8.    Damages and attorneys' fees provided authorized by KCPA and CUTPA;

9.    Damages and other relief pursuant to the Electronic Funds Transfer Act; and

10.    Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law.

11.    Any other and further relief as this Court may deem necessary and appropriate.

Respectfully submitted,

**JONES WARD PLC**
Jasper D. Ward
Alex C. Davis


/s/ Jasper D. Ward
Marion E. Taylor Building
312 S. Fourth Street, 6th Floor
Louisville, Kentucky 40202
Telephone: (502) 882-6000
jasper@jonesward.com
alex@jonesward.com